Peck, J.
The charge refused, and the charge given, present the question, whether a contract for service upon a farm, “ for six months certain,” at a specified rate per month, -no time being expressed therein for its payment, confers upon him who renders the service the legal right to sue for a partial performance, when he voluntarily abandons such service without justification or excuse, at the end of the first month.
The court below seem to have regarded such a contract as severable into months, or as six contracts, each for one month’s service,, in regular succession, and not as one entire contract for service for six months; and accordingly charged ■the jury, that in such case, the plaintiff might demand payment at the end of each month, and if not paid, he might sue for and recover it, even though he had then left the service ■without cause or excuse.
The court deduce this severable quality of the agreement, from the words “ at the rate of $11 per month,” used in prescribing the compensation for the service; as the court also ■charged the jury, that if the agreement was to serve for six months certain, for sixty-six dollars, as claimed in the answer, then the plaintiff could not recover.
The question, therefore, depends upon the effect which .should be given to a stipulation of a specified rate per month, in an agreement to serve another for a fixed period of time. This is a mere question of construction as to the intention off the parties, and is to be gathered from the language employed, and the subject matter of the contract. The term of service is, itself, entire, it was “for a period of six months ■certain,” and also for a period of six ■ months immediately •thereafter, if the plaintiff did not go to Pennsylvania. It was for labor upon a farm, where the value of the service, and the amount of the compensation, vary with the season ■and the character of the work required, and a pro rata stipulation appended to an agreement, to render such service for six months or a year, could hardly have been intended as a precise and reasonable equivalent for any one month of that period, separate and disconnected from the other months; *566 but would rather seem to have been stated, as an agreed average of the whole term, if fully served out. In other words, not as a stipulation to pay or receive that precise sum for any one month, but as a means of ascertaining the aggregate compensation for the whole term, expressed in a form simple, easily comprehended, and requiring no effort to compute or understand it.
In Lantry v. Parks, 8 Cow. 63, where the plaintiff had agreed to work for the defendant for one year, at ten dollars per month, and had worked, under said agreement, ten and a half months, and then left defendant’s service, saying he would work no more for him, it was held that the contract was entire, and that plaintiff could maintain no action to recover for the-labor actually performed.
In Wright v. Turner, 1 Stewart (Ala.) 29, where the plaintiff worked for the defendant one month and eight days, under an agreement to labor for him three months, “ at ten dollars per month,” and then left the defendant’s service against his consent, it was held to be an entire contract, and that the-plaintiff could not recover for the time he had actually served.
The same doctrine was also held in Decamp et al. v. Stevens, 4 Blackford 24, where the plaintiff had worked for the defendant three months and ten days, under a contract to serve the .defendant for one year, at the rate of nine dollars per month, and then left his employer, and sued him for the work thus done.
A similar decision as to the entirety of the contract and the plaintiff’s inability to recover, was made in Badgley v. Heald, 4 Hillman (Ill.) 64, where the plaintiff had worked for the defendant three months, .under a contract to labor for the defendant six months, for eight dollars a month, and then left the defendant’s service without justifiable cause.
So also in Mullen v. Gilkinson 19, Verm. 503, it was held that no such recovery could be had for three months’ labor, performed under a contract to labor for seven months, at eleven dollars a month, where the plaintiff had left the service of the defendant, before the end of the term, and without sufficient cause.
*567 This doctrine was also held in Miller v. Goddard, 34 Maine 102, where the plaintiff had worked for the defendant three or four months, under a contract for a longer term, at an agreed price per month, but voluntarily quit the service of the defendant before the expiration of the term.
So in Davis v. Maxwell, 12 Metcalf, 286, a similar decision was made in a case where the plaintiff, after working three months, under a contract to serve the defendant seven months, at twelve dollars a month, left her service without sufficient cause and against her consent.
In all these cases, and in others which might be cited, the agreement was held to be entire, and not severable, even though there was a rate per month specified in the contract for compensation for the labor to be performed. In the case last cited (12 Metcalf, 286), Hubbard, J., in 'delivering the opinion says : “ The plaintiff has argued that it was a contract for seven months, at twelve dollars per month, to be paid at the end of each month. But, however reasonable such a contract might be, it is not, we think, the contract proved. There is no time fixed for the payment, and the law, therefore, fixes the time ; and that is, in a case like this, the period when the service is peformed. It is one bargain; performance on one part, and payment on the other; and not part performance and full payment for the part performed. The-rate per month is stated, as is common in such contracts, as fixing the rate of payment in case the contract should be given up by consent, or death or casualty should determine it before its expiration, without affecting the rights of the party. Such contracts for hire, for definite periods of time, are reasonable and convenient, are founded in practical wisdom, and have long received the sanction of the law.”
It is clear, we think, from the authorities cited, that the court below erred in charging the jury, that, in a contract to labor for six months certain, at eleven dollars per month, the contract being silent as to the time of payment, the law would presume that payment was to be made at the end of each month, and that, on nonpayment at the end of the first month, the plaintiff might maintain a suit for it, even if he had *568 ceased, at the end of the month, of his own will, to perform further service; and that, for this error, the judgment should be reversed.
We have been referred to the case of Britton v. Turner (6 N. H. Rep. 481), which permits, under certain safeguards, a person in default, in a special contract for service, to recover from his employer to the extent of the benefits conferred by his partial performance, over and above the damages resulting to the employer from his breach of the special contract between them; the benefit so received constituting, it is said, a new consideration, from which the law will imply a promise to pay the reasonable worth of such excess. If this case is to be followed as sound law, it would not relieve us from the necessity of reversing the judgment in the case at bar, for the pleadings were not framed to enforce such a recovery; evidence to develop a defense to it was inadmissible, and the charge of the court does not furnish the safeguards and protection which that decision secures to the employer. The case of Britton v. Turner is itself an innovation upon the long established principles governing entire contracts, lessens the sanctity of agreements, and tends to encourage their violation. It must be admitted, however, that it lays down a series of propositions designed and well calculated to protect the employer from all possible loss; and, inter parties, perhaps, in most cases, would do complete equity; but the impolicy of encouraging the violation of agreements, and of relieving the defaulting party from any of the consequences of an intentional breach of his agreement, still remains. Beside, to carry out the New Hampshire rule in its spirit — a complete and perfect indemnity — would require, in some instances, an inquiry into the remote consequences of the breach, which is forbidden by other well settled rules of law. In short, while we are not disposed to dispute the general equity of the New Hampshire rule, as applied to the rights of the parties to the contract, we are not at present prepared to adopt it as a rule of judicial Interpretation in Ohio. So radical a change in the legal effect of entire contracts, and the breach of them, should originate with the legislature, and not with the judiciary. The case *569 does not seem to have met with the general approbation of the courts in this country since its determination (19 Pick. 528; 12 Metc. 286; 34 Maine, 102); and is at variance with the decisions in 16 Ohio, 238; 6 Ohio St. Rep. 505.
Judgment of the district court and court of common pleas reversed, and cause remanded to the court of common pleas for further proceedings.
Scott, C.J., and Sutliff, Gholson and Brinkerhoff, JJ., concurred.